**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. _____

PATRICK GORHAM and
NORTHWEST PACIFIC PROPERTY
MANAGEMENT LLC,

      Plaintiffs,

v.

MICHELLE KAUFMAN, CLAUDIA MATHIS
and EXPEDIA FINANCIAL CONSULTANTS INC.,
dba REGROUP PARTNERS, INC.,

      Defendants.

_____/

## COMPLAINT

      Plaintiffs, Patrick Gorham and Northwest Pacific Property Management LLC (collectively, the "Plaintiffs"), sue Defendants, Michelle Kaufman, Claudia Mathis and Expedia Financial Consultants, Inc., dba collectively under the fictious name Regroup Partners, Inc. (collectively, the "Defendants"), and allege the following:

### JURISDICTION, VENUE, AND IDENTIFICATION OF THE PARTIES

      1.    This is an action for damages between citizens of different states where the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, court costs and attorneys' fees. This Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

      2.    Plaintiff, Patrick Gorham ("Mr. Gorham"), is a citizen of Oregon and Plaintiff, Northwest Pacific Property Management, LLC ("Northwest Pacific"), is an Oregon limited liability company. Northwest Pacific is comprised of Mr. Gorham, a citizen of Oregon, United States. Therefore, Plaintiffs are citizens of Oregon.

3.      Defendants, Michelle Kaufman and Claudia Mathis, are citizens of Florida, who upon information and belief reside in Palm Bach County, Florida.  Expedia Financial Consultants, Inc. ("Expedia Financial") is a Florida corporation with its principal place of business in Palm Beach County, Florida.   Therefore, Defendants are citizens of Florida.

4.      This court has personal jurisdiction over Defendants because Defendants are residents of the state of Florida.

5.      Additionally, this court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(2) by engaging in substantial and not isolated activity throughout the state of Florida and pursuant to Fla. Stat. § 48.193(1)(a) by operating, conducting, engaging in, or carrying on a business or business venture in the state of Florida.

6.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) and (c) because a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district and because Defendants reside in this judicial district pursuant to 28 U.S.C. § 1391(c)(2).

7.      At all material times herein, Defendants have been, and are currently, the registered owners of the fictious entity, Regroup Partners, Inc.  It is registered by the number G19000038597 with the Defendants, Michelle Kaufman and Claudia Mathis, are also the controlling shareholders and/or owners of Expedia Financial.  Doing business under the fictious entity Regroup Partners, Inc., Defendants operate as a debt management and credit repair organization offering and providing services for both individuals and businesses nationally, including in the state of Oregon.

8.      This action is against Defendants for violations of Oregon state law designed to protect Oregon citizens, including Oregon's Debt Management Services Act ("Oregon DMSP"), ORS§ 697.602- §697.842, Oregon's Business and Trade Practices Act ("UTPA"), ORS §646.608

*et seq.*; Oregon's Uniform Commercial Code ("Oregon UCC") ORS §79 *et seq*. as well as common law claims for breach of fiduciary duty and unjust enrichment.

9.      All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

10.     Plaintiffs have retained the undersigned counsel to pursue this action on their behalf and are required to pay them a fee for their services.

## FACTUAL BACKGROUND

11.     Plaintiffs bring this suit to remedy the injuries it suffered because of Defendants' predatory and illegal debt management and credit repair scheme.  While Defendants claim to assist those individuals and businesses in financial trouble, including Plaintiffs, Defendants operate a scam designed to ensnare victims into paying exorbitant and illegal fees, leaving victims more helpless than they were before being duped by Defendants.

12.     Preying on individuals and businesses struggling with financial difficulties, such as the Plaintiffs, Defendants have engaged in an fraudulent scheme by which Defendants intentionally disregard state laws to obtain illegal service fees and bi-weekly payments for their services under false and unlawful pretenses.

13.     Using aggressive marketing techniques, Defendants solicit unsuspecting financially troubled individuals and businesses, such as the Plaintiffs, and persuade them to sign up for personal and business debt management and credit repair services wherein Defendants collect illegal and fraudulent service fees, charges and bi-weekly payments.

14.     Defendants market, promote and sell debt management and credit repair plans as means for individuals and businesses to consolidate, manage, and pay off their debts without it

3

affecting their personal or business credit, with the assistance of supposedly experienced and acclaimed professionals in credit counseling.

15.     Defendants' website (www.regrouppartners.com) in existence during all materials times stated "[i]f your personal and business credit ratings are less than ideal, though, we can help you! Our experienced team provides personal and business credit counseling."

16.     On or about May 20, 2020, Mr. Gorham while in Oregon received an unsolicited text message on his wireless telephone from a representative of the Defendants. The individual solicited Mr. Gorham for purposes of providing credit help, to assist Mr. Gorham to his personal and business credit, and help reduce his personal and business debts. At the time Mr. Gorham received this unsolicited text, Mr. Gorham had personal debt and his business, Northwest Pacific, also had business debt. Due to Mr. Gorham's worrisome financial predicament, he responded to the text. So, Mr. Gorham responded to the text from Defendants and requested more information from Defendants about their offered services.

17.     Thereafter, on May 20, 2020, Defendants' agent, Laura Kaiser (laura@regroupparnters.net), replied to Mr. Gorham's text. In her email she represented through written email communication to Plaintiffs:

> My company is an Attorney based business debt restructuring company and fully Business Solutions company; we restructure business debt, creative funding, factoring, merchant processing and traditional funding.
>
> I've been working with businesses for the past 9 years that are struggling with single and even multiple merchant cash advances.

This type of alternative financing can significantly strain a business's cash flow.

I wanted to introduce our service the, the benefits it can provide to getting your company the cash flow it needs to proper. If you are finding yourself a hard time making this daily and weekly payments, I have a solution to put cash flow back into your company immediately**.  I can get you out of debt quicker and REDUCE by 60-80% without it affecting your personal and business credit and restructuring will not affect your ability to borrow in the future with friendly leaders**. (emphasis added).

18.     Additionally, on August 4, 2020, Defendants, by and through their agent, defendant, Claudia Stefano-Mathis (claudia@regrouppartners.com), represented through written email communication:

 I assure you we will get control on these MCA's as unfortunately they end up hurting more so then helping with the daily and weekly payments not to mention fees and interest.  **I will get all those fees back to you**! (emphasis added).

19.     Further, on or about August 4, 2020, Defendants, by and through their agent Laura Kaiser, represented through a telephone communication (from 954-947-3559) - which Defendants represented was being recorded - that Defendants' fee for their services is 25% of the overall savings that Defendants obtain in settling Plaintiffs' debts.  Additionally, at such time Defendants also represented that the upfront retainer and bi-weekly fees would be maintained in a trust account

5

and would be predominantly utilized toward paying Plaintiffs' creditors and decreasing Plaintiffs' debt.

20.     Defendants, through the internet and in written email communications, promote Defendants as experienced advisors.  Defendants' solicitation led Plaintiffs to believe that Defendants have ability to reduce and/or eliminate both Mr. Gorham's personal debt and Northwest Pacific's business debt, and that Defendants will repair Plaintiffs' personal and business credit.

21.     Defendants do not provide advice, education or financial counseling.  They are in business to make money by inducing unsuspecting consumers to pay exorbitant, illegal up-front and bi-weekly fees for debt management and credit repair plans based upon false promises.

22.     Defendants collect up-front fees from consumers and, thereafter, bi-weekly payments before providing any services to the consumers, including Plaintiffs.  Defendants then retain the up-front fees and monthly service fees for Defendants' own use and benefit without providing any legitimate services for the fees.

23.     Nowhere do Defendants inform consumers that these fees are illegal.

24.     Further, the Defendants promotions are riddled, with false, misleading, and deceptive promises and statements, such as, for example, promising to reduce Plaintiffs' debt by 60-80% while helping to repair Plaintiffs' personal and business credit.  Further, Defendants also make deceptive promises and statements about the fees for Defendants' services.  Specifically, as described above, Defendants, by and through their agents, in both telephone communications and written electronic communications advised Plaintiffs that they will only be required to pay Defendants if Defendants are able to obtain savings for Plaintiffs, and, in that instance, Defendants' fee will be equivalent to 25% of the overall savings that Defendants obtain on Plaintiffs' behalf.

Moreover, Defendants also advised that Plaintiffs' payments were being held in a trust account and utilized to would be predominantly utilized toward paying Plaintiffs' creditors and decreasing Plaintiffs' debt when, in fact, this was not true.

25.      In reliance on all of Defendants' representations, on or about August 4, 2020, Plaintiff,  Mr. Gorham, entered into a debt management plan with Defendants to provide debt management and credit repair services for both Mr. Gorham's personal debt and Northwest Pacific's business debt in the state of Oregon ("Debt Agreement").  At such time, Mr. Gorham was required to, and did in fact, sign a Power of Attorney in the state of Oregon allowing Defendants: "[1] To discuss, release, or obtain any business or personal information relating to my company's and/or my, credit, debt, assets, income and any other financial information. [2] To communicate regarding the state of my company's and/or my financial affairs, ability to re-pay debts, the specific hardships experienced, and/or the possibility of filing for bankruptcy should creditors refuse to negotiate in good faith with [Defendants] its representatives or assigns."

26.      An  up-front fee in the amount of $3,500.00, for services that were supposed to help Plaintiffs reduce their overall personal and business debt and improve their credit position was paid.  And thereafter, additional bi-weekly payments were made to Defendants in the amount of $20,175.32 from August 7, 2020 through September 25, 2020 until October 9, 2020 when Defendants increased the bi-weekly fee to $24,175.32, which were paid through December 4, 2020.

27.      Even after execution of the Debt Agreement, Defendants, by and through telephonic and written electronic communications, continued to represent that the foregoing fees were related to reducing Plaintiffs' debt and that Mr. Gorham ultimately will only be charged a fee equivalent to 25% of the savings that Defendants earn for Plaintiffs.

28.     Specifically, on September 11, 2020, and again on October 5, 2020, Defendants, by and through their agent (sierra@regrouppartners.com), even clarified and confirmed by written email communication that the fees Mr. Gorham was responsible for under the Debt Agreement was only 25% of the overall savings that Defendants obtain for Plaintiffs.

29.     However, once consumers are enrolled in the plan, Defendants' overall scheme is the same, that is, obtain cash from the consumer, and using consumers monies to earn interest while delaying any payments to the creditors of consumers as long as possible in order to maximize the service charges, fees and interest earned by Defendants.  As described below, Plaintiffs learned that notwithstanding Defendants' representation, the lion's share of the fees were utilized for Defendants' own benefit as "program fees" and were not being paid to Plaintiffs' creditors to reduce Plaintiffs' debts.

30.     Upon being enrolled in Defendants' service plan, Defendants immediately instructed Plaintiffs to "stop payment on all lenders currently set on ACH to debit money from your bank account" and to change Plaintiffs' online banking login, and also to "open a secondary business account."  This resulted in Plaintiffs breaching their contracts with their lenders and caused multiple lawsuits to be filed against both Mr. Gorham, individually, and Northwest Pacific.

31.     Moreover, Defendants even attempted to extort additional fees from Mr. Gorham at the conclusion of their services by claiming that Defendants are entitled to additional fees in an amount equivalent to 25% of the Plaintiffs' initial overall debt (as opposed to 25% of the overall savings), regardless of whether Defendants ultimately obtained any debt reduction for Plaintiffs.

32.     Defendants entice consumers, including the Plaintiffs, to enter into fiduciary relations with Defendants.  In furtherance of the scheme to defraud consumers such as Plaintiffs, Defendants, by and through their agents (claudia@regrouppartners.com)  attempt to clothe their

practices with integrity by representing to Plaintiffs through written email communication on August 5, 2020 that "**its our fiduciary responsibility to protect you and your company and we will**." (emphasis added).

33.     On August 25, 2020, Defendants, by and through their agent (claudia@regrouppartners.com), also represented to Plaintiffs through electronic communication that "[m]erchant case advance debit is our wheelhouse, I like to use the chess analogy, I know the steps and moves these lenders take to get repaid.  I know the names of the players i.e. lenders, law firms, collections agencies and syndicators.  My company is respected in the industry which is a huge advantage to our clients."

34.     Further, Defendants, by and through their agent (claudia@regrouppartners.com), emailed Plaintiffs on August 26, 2020, representing: "**I will give you peace of mind – it's my job to protect and save you!! I won't let you down**!" (emphasis added).  Similarly, Defendants, by and through their agent, defendant, Stefano-Mathis (claudia@regrouppartners.com), emailed Plaintiff on August 27, 2020, representing: "please don't panic this is a great thing we are doing! **You and your wife and company will be fine**." (emphasis added).

35.     Defendants have received funds that were derived unlawfully as a consequence of the acts and practices complained of herein, and Defendants do not have a legitimate claim to those funds.

36.     Additionally, from September 2020 through December 2020, additional payments were made to Defendants in the total amount of $22,500.00 to an attorney (who worked with and/or on behalf of Defendants) to represent Plaintiffs in lawsuits filed against Plaintiffs by their respective individual and business creditors, which was necessitated by Defendants' instructions to Plaintiffs to stop payment to their creditors.  This sum was supposed to be paid out of the sums

in the trust account where the bi-weekly payments were being maintained by Defendants, supposedly on Plaintiffs' behalf, but Defendants refused to pay such sum from the monies held in the trust account.

37.    Bi-weekly payments in the amount of $20,175.32 from August 17, 2020 through September 25, 2020 were made to Defendants until October 9, 2020 when Defendants increased the bi-weekly fee to $24,175.32, which were to Defendants paid through December 4, 2020.  These payments were automatically withdrawn from Plaintiffs' accounts. It turns out these fees were not even predominantly being utilized by Defendants to pay Plaintiffs' creditors.  Rather, Defendants kept the lion's share of the fees for themselves in the amount of $14,118.35 out of each bi-weekly payment.

38.    If the foregoing were not enough, (i.e., Defendants fraudulently and illegally obtaining approximately $205,077.88), Defendants then attempted to extort an additional $304,840.69.  And when Plaintiffs refused to pay the additional illegal sums, Defendant, Expedia Financial, filed an unlawful, fraudulent Uniform Commercial Code Financing Statements (UCC Nos. 92658929 and 92659260) against Northwest Pacific with the Oregon Secretary State of State on December 22, 2020 for the unlawful "business debt fees" in the amount of $304,329.10.

39.    As a result of all the foregoing, Plaintiffs have suffered damages including payment of exorbitant illegal fees, charges for illusory services, loss of up-front and bi-weekly payments made to the Defendants, late fees and other changes imposed by creditors as well as harm to their credit and other consequential damages.

## COUNT I

### VIOLATIONS OF THE OREGON DEBT MANAGEMENT SERVICES ACT
### (Patrick Gorham against Defendants)

40.    Plaintiff, Patrick Gorham, hereby realleges and incorporates the allegations contained in paragraphs 1-39 as if fully set forth herein.

41.     Mr. Gorham, as an individual residing in the state of Oregon, is protected by the Oregon DMSP, ORS§ 697.602- §697.842, which protects Oregon residents from any debt management service providers, such as the Defendants doing business (*i.e.,* performing debt management services in return for consideration) in the state of Oregon.

42.     Mr. Gorham is a consumer as that term is defined by ORS §697.602(1). Specifically, Mr. Gorham is an individual who, at all material times, was obligated to pay a debt and on whose behalf, Defendants performed and agreed to perform a debt management service.

43.     Defendants provide and/or perform a "debt management service" as that term is defined by ORS §697.602(2).  Specifically, Defendants performed the following activities for Mr. Gorham and received consideration for their services: (a) received funds for the purpose of distributing the funds among Mr. Gorham's creditors in full or partial payment of Mr. Gorham's debts; (b) improved and/or offered to improve or preserve Mr. Gorham's credit record, credit history or credit rating; (c) modifying or offering to modify the terms and conditions of an existing loan from or obligation to a third party; and (d) obtaining or attempting to obtain as an intermediary on Mr. Gorham's behalf a concession from a creditor, including but not limited to, a reduction in the principal, interest, penalties or fees associated with a debt.

44.     Defendants area "debt management service provider" as that term is  defined by ORS §697.602(3).  Specifically, at all material times, Defendants did business in the state of Oregon.  Defendants intentionally and purposely solicited Mr. Gorham in the state of Oregon to provide him with a debt management service.   Thereafter, Defendants repeatedly contacted Mr. Gorham in the state of Oregon by telephone and electronic mail for Defendants to seek a commercial, financial benefit in Oregon.  Defendants also sent the Debt Agreement to Mr. Gorham in Oregon where Mr. Gorham executed it as well as a power of attorney for Defendants to act on

Mr. Gorham's behalf with his creditors.  At all times, Defendants knew that Mr. Gorham was a resident of Oregon and made an intentional effort to perform a debt management service for Mr. Gorham in the state of Oregon.  Additionally,  Defendants provided or performed a debt management service for Mr. Gorham in exchange for money.

45.     The Oregon DMSP, ORS §697.612 provides, in pertinent part, "A person that has not registered with the Director of the Department of Consumer and Business Services under ORS 697.632 (Registration Procedure) may not engage in business int this state in the court of which the person: (a) Performs a debt management service; or (b) Receives money or other valuable consideration or expects to received money other valuable consideration for. . . . providing advice, assistance, instruction or instructional material concerning a debt management service to a consumer."

46.     Defendants violated ORS §697.612 by failing to register with the Director of the Department of Consumer and Business Services under ORS §697.632 before entering in the Debt Agreement, performing debt management services for Mr. Gorham, and receiving any money from Mr. Gorham.

47.     The Oregon DMSP, ORS §697.652, also provides necessary and required contents, form and language that must be included in any written agreement for debt management services.

48.     Defendants violated ORS §697.652 because the Debt Agreement fails to contain the necessary and required language of ORS §697.652, and they also failed to provide Mr. Gorham with the required budget analysis separate from the Debt Agreement.

49.     The Oregon DMSP, ORS §697.707 provides: "(1) A debt management service provider may not charge or receive from a consumer a fee described in ORS 697.692 (Fees) until after the debt management service provider makes the disclosures described in this section.

(2) A debt management service provider shall give to every consumer for whom the debt management service provider offers to perform a debt management service a document that:

(a) States the maximum amount the debt management service provider may charge the consumer for all debt management services that the debt management service provider will perform;

(b) States that the consumer is responsible for paying the debt management service provider's charges;

(c) Warns the consumer that canceled debt may constitute income that is subject to state and federal taxation and advises the consumer to consult with a tax professional;

(d) Describes completely and in detail the debt management services that the debt management service provider will perform for the consumer and states the amount the consumer must pay for each service and for all services; and

(e) States that the consumer may bring an action against the bond required under ORS 697.642 and lists the name and address of the surety that issued the bond.

(3) A debt management service provider that performs a debt management service as defined in ORS 697.602 (2)(b) or described in ORS 697.612 (1)(b)(E), in the document required under subsection (2) of this section, shall:

(a) Describe, accurately and completely, the consumer's right to review consumer credit information about the consumer that a consumer reporting agency, as defined in 15 U.S.C. 1681a, maintains; and

(b) State the approximate price that a consumer reporting agency will charge a consumer to review the consumer credit information described in paragraph (a) of this subsection and that the consumer may review the information at no charge if the consumer makes a request to the consumer reporting agency within 30 days after the consumer was denied credit.

(4) A debt management service provider that does not hold a consumer's funds, directly or indirectly, shall include in the document required under subsection (2) of this section these additional statements:

(a) That the debt management service provider does not predict or guarantee specific results and cannot force or require a creditor to accept a specific settlement;

(b) That the debt management service provider does not make scheduled periodic payments to creditors;

(c) That creditors may continue collection efforts, including lawsuits;

(d) That the consumer's failure to make monthly payments on outstanding debt will likely have a negative impact on the consumer's credit score;

(e) That the consumer must make regular monthly deposits of funds in an account the consumer establishes and maintains in the consumer's name with an insured institution, as defined in ORS 706.008, and designates specifically for making disbursements in connection with a debt management service; and

13

(f) That the debt management service provider will withdraw fees for debt management services from the account described in paragraph (e) of this subsection only with the consumer's specific authorization and that the debt management service provider does not have custody, control or separate or additional access to the account.
 (5) The document described in this section must provide a space for the consumer to sign the form under a statement that indicates that the consumer has read and understands the disclosures set forth in the document

50.     Defendants violated ORS §697.707 by charging and receiving any money from Mr.

Gorham without providing him with the necessary and required disclosures of ORS §697.707.

51.     The Oregon DMSP, ORS §697.692 also  provides:

(1) Subject to subsection (4) of this section, a debt management service provider may charge a consumer only the following fees:
(a) An initial fee of not more than $50.
(b) A fee reasonably calculated to recover the costs that the debt management service provider incurs in providing an initial counseling session or education class. The debt management service provider may charge the fee described in this paragraph in advance, but the fee may not exceed $50.
(c) A monthly fee equivalent to 15 percent of the funds that the debt management service provider receives from a consumer for payment to the consumer's creditors. The debt management service provider may charge the fee described in this paragraph only if the debt management service provider holds a consumer's funds, directly or indirectly, on the consumer's behalf. The fee described in this paragraph may not exceed $65 per month.
(d) A fee equivalent to 15 percent of the amount of debt a consumer owes to one or more creditors at the time the consumer signs the agreement described in ORS 697.652 and places funds in a bank account that the consumer establishes or maintains in the consumer's own name with an insured institution, as defined in ORS 706.008, and designates specifically for making disbursements in connection with a debt management service. The debt management service provider may charge the fee described in this paragraph only if the debt management service provider does not hold a consumer's funds directly or indirectly. The debt management service provider may not charge the fee described in this paragraph in amounts or installments that exceed $65 per month.
(e) A fee equivalent to 7.5 percent of the difference between the principal amount of the debt the consumer owed to the consumer's creditor at the time the consumer signed the agreement described in ORS 697.652 and the amount the consumer paid to the creditor to settle the debt, exclusive of fees the consumer paid to the debt management service provider under

14

paragraph (a), (b) or (d) of this subsection. The debt management service provider may charge the fee described in this paragraph only if the debt management service provider obtains from the consumer's creditor a reduction in the principal amount of the consumer's debt.

(f) A fee of not more than $50 per month during the term of an agreement between the consumer and the debt management service provider under which the debt management service provider improves or preserves, or offers to improve or preserve, a consumer's credit record, credit history or credit rating but does not conduct a budget analysis for the consumer, act as a broker for another debt management service provider or otherwise engage in any other activity that constitutes a debt management service. A fee that a debt management service provider charges under paragraph (a) of this subsection is the fee for the first month of service under this paragraph.

(2) A debt management service provider may accept payment for a fee described in subsection (1) of this section by means of:

(a) A check, draft or similar paper instrument; or

(b) A transfer of funds through an electronic terminal, telephonic instrument, computer or magnetic tape that transmits an order, instruction or authorization to a financial institution to debit or credit an account.

(3)(a) A consumer may void a contract for debt management services, and a debt management service provider shall return to the consumer all sums the consumer paid to the debt management service provider and reimburse the consumer for reasonable attorney fees the consumer incurred in any action to enforce rights the consumer has under this subsection, if the debt management service provider charges the consumer more than the amounts set forth in this section.

(b) A consumer may not waive any of the rights the consumer has under this subsection, and any provision in any contract or other agreement that purports to waive the consumer's rights is void.

52.    Defendants violated ORS §697.692 by charging an illegal fee in excess of the maximum allowable fee that Defendants are permitted to charge individuals residing in Oregon for their debt management services.

53.    As a result of Defendants' foregoing violations of Oregon DMSP, pursuant to under ORS §697.692(3)(a), the Debt Agreement is void, and Defendants, Michelle Kaufman, Claudia Mathis, and Expedia Financial, must return all sums paid to Defendants, in the amount of $205,077.88, and reimburse Mr. Gorham for his attorneys' fees incurred to enforce his rights under ORS §697.692(3)(a).

WHEREFORE, Plaintiff, Patrick Gorham, demands a declaration that the Debt Agreement is void and a judgment for damages in the amount of $205,077.88 against Defendants, punitive damages, attorneys' fees and costs, and such other and further relief as is just and proper.

**COUNT II**

**VIOLATIONS OF OREGON'S BUSINESS AND TRADE PRACTICES ACT**
**(Patrick Gorham against Defendants)**

54.     Plaintiff, Patrick Gorham, hereby reallege and incorporate the allegations contained in paragraphs 1-39 and 41-53, as if fully set forth herein.

55.     Mr. Gorham, as a resident of the state of Oregon, is protected by UTPA, ORS§ 646.608, which protects Oregon residents from any unfair and deceptive business practices being performed in the state.

56.     Plaintiff, Mr. Gorham, is a person entitled to bring a civil action by private party as provided under  ORS §646.638.

57.     Defendants are each a "person" as defined by  ORS §646.605(4).

58.     ORS  §646.608  enumerates  approximately  seventy-nine  (79)  unlawful  trade practices that constitute a violation of UTPA.

59.     Specifically, ORS§646.608(1)(kkk) provides that a "person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:. . . (kkk) violates a provision of  ORS §§697.612, 697.642, 697.652, 697.662, 697.682, 697.692, 697.707."

60.     As described above, Defendants have willfully used or employed methods, acts and practices in the course of their business that violate ORS §§697.612, 697.642, 697.652, 697.682, 697.692, 697.707 and, thus, Defendants are liable for violating UTPA.

61.     Defendants' foregoing violations of UPTA were willful, intentional and wrongful and were the direct and proximate cause of damages to Mr. Gorham, including an ascertainable loss of money or property.  Defendants' participation in foregoing scheme also demonstrates intentional and willful conducted by the Defendants, in reckless disregard of the rights of Mr. Gorham, for the sole purposes of making profits at the expense of Mr. Gorham, thereby justifying an award of punitive damages in amount appropriate to punish and set an example of Defendants in accordance with ORS §646.638(1).

WHEREFORE, Plaintiff, Patrick Gorham, demands a judgment against Defendants for damages, punitive damages, attorneys' fees and costs, and such other and further relief as is just and proper.

## COUNT III

### BREACH OF FIDUCIARY DUTY
### (Plaintiffs against Defendants)

62.     Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1-39, as if fully set forth herein.

63.     A fiduciary relationship existed between Plaintiffs and Defendants.

64.     Defendants even expressly acknowledged and accepted this duty, upon which Plaintiffs relied, by advising Plaintiffs on August 5, 2020, that "[i]t's our fiduciary responsibility to protect you and your company and we will . . . .I assure you we will get you through this."

65.     As fiduciaries, Defendants owed Plaintiffs the duty to refrain from self-dealing, the duty of loyalty, the overall duty not to take unfair advantage, and act in the best interest of Plaintiffs, and the duty to disclose material facts.

66.     As described herein, Defendants breached their fiduciary duties to Plaintiffs by charging an illegal and excessive fee for their services, and by misleading and misrepresenting to

Plaintiffs, upon direct inquires, that the fee for its services was "25% of the savings" that Defendants obtained for Plaintiffs  (and not 25% of his total debt).

67.     Defendants also breached their fiduciary duties to Plaintiffs by instructing Plaintiffs to "place a stop payment on all lenders currently set on ACH to debit money from [his] bank" and to "change [his] online banking login with [his] current bank" in direct violation and breach of Plaintiffs' contracts with their creditors without explaining that, by doing so, Plaintiffs would be in breach of their contractual obligations to their creditors and without identifying the risks involved.

68.     Defendants actions were taken solely for the benefit of and to further Defendants' own interests to the detriment of Plaintiffs.

69.     Defendants' breaches were willful, intentional and wrongful and were the direct and proximate cause of damages to Plaintiffs.

WHEREFORE, Plaintiffs demands judgment against Defendants damages, interest, costs, the imposition of a constructive trust, and any other relief as is just and proper.

## COUNT IV

### UNJUST ENRICHMENT
### (Plaintiffs against Defendants)

70.     Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1-24 and 26-39, as if fully set forth herein.

71.     The Defendants have obtained a benefit from Plaintiffs.  Specifically, Defendants unlawfully charged exorbitant and illegal fees in the amount of $205,077.88 for debt management and credit repair services for no legitimate services provided, all of which profited the Defendants at Plaintiffs' expense.

72.     The Defendants have actual knowledge of the benefit received.

73.     The Defendants have voluntarily accepted and retained these benefits conferred by Plaintiffs.

74.     Because of the facts and circumstances occurring between the parties described herein, it would be unequitable and unjust for the Defendants to retain such benefit without compensation to Plaintiffs.

75.     The Defendants have been unjustly enriched at the expense and to the detriment of Plaintiffs, no part of which has been paid, although duly demanded.

WHEREFORE, Plaintiffs demand judgment against the Defendants for damages, prejudgment interest, costs and any other relief as is just and proper.

## COUNT V

### VIOLATION OF OREGON'S UNIFORM COMMERCIAL CODE
(Northwest Pacific against Expedia Financial)

76.     Plaintiff, Northwest Pacific, hereby realleges and incorporates the allegations contained in paragraphs 1-39 as if fully set forth herein.

77.     Expedia Financial filed two Uniform Commercial Code Financing Statements (UCC Nos. 92658929 and 92659260) against Northwest Pacific with the Oregon Secretary State of State on December 22, 2020 for its unlawful "business debt fees" for $304,329.10.

78.     ORS §79.050 provides that a "person may file an initial financing statement . . . only if (a) the debtor authorizes the filing in an authenticated record or pursuant to subsection (2) or (3) of this section; or (b) the person holds an agricultural lien that has become effective at the time of filing and the financing statement covers only collateral in which the person holds an agricultural lien. (2) By authenticating or becoming bound as a debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement, and an amendment covering: (a) The collateral described in a security agreement; and (b) Property that becomes

19

collateral under ORS 79,0315 (UCC-9-315. Secured party's rights on disposition of collateral in and proceeds) (1)(b), whether or not the security agreement expressly covers proceeds. (3) By acquiring collateral in which a security interest or agricultural lien continues . . . "

79.     Expedia Financial violated ORS §79.050 because it is not a person entitled to file a financing statement against Northwest Pacific.  Northwest Pacific never authorized the filing of the financing statements and there is no security agreement otherwise authorizing the filing of the financing statements.  Expedia Financial unlawfully filed the financing statements without any lawful basis to do so under ORS §79.050.  Moreover, the claimed debt in these financing statements, is unlawful and cannot give rise to any claimed security interest.

80.     Expedia Financial willfully, knowingly, and maliciously filed these false fraudulent UCC filings knowing that they were untrue.

81.     Northwest Pacific has suffered actual and special damages which are directly and proximately caused as result of the fraudulent, false UCC filings including, but not limited to, preclusion on the closing of the sale of Northwest Pacific.

82.     As a result, Northwest Pacific is entitled to damages pursuant to ORS §79.0625 against Expedia Financial for the damages it has incurred caused by Expedia Financial's failure to comply with ORS§ 79 *et sq*.

WHEREFORE, Plaintiff, Northwest Pacific, demands a judgment against Defendant, Expedia Financial, for damages and costs, and such other and further relief as is just and proper.

Dated: January 28, 2021

ROSENTHAL LAW GROUP
2115 N. Commerce Parkway
Weston, FL  33326
954.384.9200
954.384.0017 Fax

By: /s/ Alex P. Rosenthal
     Alex P. Rosenthal
     Fla. Bar No. 815160
     alex@rosenthalcounsel.com
     Amanda Jassem Jones
     Fla. Bar No. 26260
     amanda@rosenthalcounsel.com